FILED
2014 Apr-01  AM 09:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| TASHA EVETTEA BARNES, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 2:12-cv-02849-JEO** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER, | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Tasha Barnes brings this action seeking judicial review of a final adverse decision of the Acting Commissioner of the Social Security Administration ("the Commissioner") denying her application for a Period of Disability and Disability Insurance Benefits ("DIB"). (Doc. 1).[1]  The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013.  The parties have consented to the jurisdiction of this court for disposition of the matter. *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a).  This court has carefully considered the record, and for the reasons stated below, finds that the decision of the Commissioner is due to be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on May 4, 2010, alleging disability beginning June 23, 2009.  (R. 142).[2]  Her claim was denied initially.  (*Id.*)  Thereafter, she requested a hearing before

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

[2]Citations to (R. ___) are to the page of the administrative record, which is encompassed within Docs. 5-1 to 5-9.

an Administrative Law Judge ("ALJ"), which was held on July 20, 2011. (R. 38). At the hearing, Plaintiff, represented by an attorney, testified, as did Vocational Expert ("VE") Deborah Civils. (*Id*.) Following the hearing, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act. (R. at 19-37). He also found that she had a residual functional capacity ("RFC") for light work with limitations for the period at issue. (R. 28). In light of these findings, the ALJ issued a decision on August 12, 2011, denying Plaintiff's claim for DIB. (*Id*. at 34).

Plaintiff requested the Appeals Council review the ALJ's decision and submitted additional evidence in the form of a brief. (R. 5). The Appeals Council declined Plaintiff's request for review. (R. 1). Therefore, the ALJ's decision represents the final decision of the Commissioner. (R. 1). Plaintiff thereafter timely filed this action for judicial review under 42 U.S.C. § 405(g), asserting that the findings of the Commissioner are not contrary to law and the decision of the ALJ is not based upon substantial evidence. (Doc. 1 at 2).

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted). As just noted, conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No ... presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).  The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

## IV.  DISCUSSION

### A.     The Facts

#### 1.      Background

At the time of the ALJ's decision, Plaintiff was thirty-one years old.  She was a high school graduate with some college.  (R. 56).  She experienced difficulty working after she was injured while lifting a patient in 2004.  (R. 45).  Despite increasing pain, she continued working until 2009.  (*Id*.)

At her hearing before the ALJ, Plaintiff described her pain as a sharp, numbing pain that burns.  (R. 46).  She further described it as constant and radiating down her hip and leg.  (*Id*.)  She is on pain medication, including Lortab, Neurotin, and Tylenol.

According to Plaintiff, she cannot stand or walk for more than about 15 minutes without having to rest.  (R. 47).  She states that she can sit for about an hour, but was limited in her ability

4

to climb stairs, bend or stoop.  (R. 47-48).  She also indicated that she is in need of surgery due to a "disk laying on the nerve," but she is unable to afford the procedure.  (R. 50).

### 2.    ALJ Findings

In pertinent part, the ALJ found that Plaintiff has the "severe" physical impairment of low back pain.  (R. 25).  He also diagnosed her as having "non-severe" impairments of asthma, migraines (headaches), hypertension, and an ovarian cyst.  (R. 25-27).   He also noted that she suffers from obesity.  (R. 27).  Despite fining these impairments "non-severe," he considered them in determining Plaintiff's residual functional capacity ("RFC").  (*Id*.) He further found that Plaintiff had the RFC to perform light work except that she could only occasionally bend and stoop, but could not climb; she needed to work in a temperature-controlled environment; she could not drive; and, she could occasionally push and/or pull with her upper extremities.  (R. 28).  Next, he found she could perform past relevant work as either a retail or fast food cashier.  (R. 31).  Lastly, he found that she was "not disabled" under the Social Security regulations.  (R. 32).

### B.    Analysis

Plaintiff argues that the ALJ erred in that (1) his decision contains a material inconsistency, (2) he failed to correctly apply the three-part pain standard, and (3) there is "absolutely no support for the ... RFC assessment as the record is devoid of any RFC assessments from any physician...."  (Doc. 10 at 5).

5

### 1.      Material Inconsistency

As to the first matter, Plaintiff argues that the decision should be reversed or, in the alternative, remanded because the finding of the ALJ that "magnetic resonance imaging on August 16, 2010, show[s] right side disc herniation at L5/S1 with no thecal sac or nerve root compression and no spinal or frontal stenosis" is materially inconsistent with the August 16, 2010 MRI report, which states that Plaintiff's MRI shows

> [t]here is a broad-based disc bulge with a right sided herniation that compresses the right side of the thecal sac and the right lateral recess.  No associated foraminal stenosis is present.  There is disc space narrowing and disc desiccation with reactive bone marrow changes.

(Doc 10 at 5-6) (citing R. 260)).   The report goes on to state that "[t]he other discs are normal.   There is no spinal or frontal stenosis elsewhere.   No thecal sac or nerve root compression is present. [sic] Elsewhere."   (*Id.*)   It concludes, with the "impression" of degenerative disc changes with a broad-based bulge and a right sided disc herniation at L5-S1."   (*Id.*)   Plaintiff argues that the ALJ's failure to appreciate that the MRI revealed nerve root compression necessitates additional review by the ALJ because it must be considered in determining whether Plaintiff's "pain meets or functionally equals Listing 1.04."   (Doc. 10 at 7).   Additionally, Plaintiff argues that the failure to appreciate the MRI results was compounded when the ALJ found that her lower back pain had "no significant bearing on [Plaintiff's] ability to work."   (*Id.* (citation omitted)).   She premises this latter argument on the determination that the ALJ found

> there is no credible, objective evidence which contradicts a conclusion that

[Plaintiff] is incapable (sic) of performing light levels of exertion with restrictions for occasional bending and stooping and bilateral pushing and/or pulling with her upper extremities.

(*Id*. (citing R. 30)).

The Commissioner responds that Plaintiff's argument that the ALJ failed to properly consider the MRI in determining whether Plaintiff met the spine disorder listing in 1.04 (20 C.F.R., Pt. 404, Subpt. P, App.1, listing 1.04.A) is without merit. (Doc. 11 at 8, n.7). She states that to meet 1.04A, Plaintiff must show not only nerve root compression, but it must be "characterized by neuro-antomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." (*Id*.)

Despite Plaintiff's assertion that "[i]n fact, the MRI revealed nerve root compression," (doc. 10 at 7 (citing R. 260), the MRI does not state that there was nerve root compression. It only states that the bulge "compresses the right side of the thecal sac and the right lateral recess." (R. 260). Additionally, there is no other medical evidence in the record showing nerve root compression, limitation of motion of the spine, motor loss, sensory or reflex loss, or a positive "straight-leg test," which would be required to constitute a listing. *See* 20 C.F.R., Pt. 404, Subpt. P, App.1, listing 1.04.A. Thus, Plaintiff's assertion is without merit.

To the extent Plaintiff relies on *Flentroy-Tennant v. Astrue*, 3:07-cv-101-J-TEM, 2008 WL 876961 (M.D. Fla. Mar. 27, 2008) and *Baker v. Barnhart*, 03-C-2291, 2004 WL 2032316 (N.D. Ill. Sept. 9, 2004), the court finds them to be factually distinguishable. First, as to *Flentry-Tennant*, it is distinguishable in that the case involved not one, but numerous misstatements. In fact, the court noted, "While each of the ... misstatements and/or mis-characterizations ... when viewed individually

7

may not constitute such error as to require reversal, the numerous misstatements ... , taken as a whole, reveal an inaccurate review of the record and inadequate support in the record." *Id*., 2008 WL 876961 at *8.  Second, as to *Baker*, the court held that the ALJ's "blatant mis-characterization" of the vocational expert's testimony required a remand because it went directly to a critical determination. *Id*., 2004 WL 2032316 at *7.

### 2.      Misapplication of the Three-part Pain Standard

Plaintiff next asserts that the ALJ failed to properly apply the three-part pain standard.  (Doc. 10 at 8).  Further, she states that she "meets the ... standard because there is evidence of an underlying medical condition and the objectively determined medical condition is of such a severity that it can be expected to cause the alleged pain." (*Id*.)  The Commissioner retorts that Plaintiff's argument that the "mis-characterization" of the MRI results was compounded when the ALJ found that her lower back pain had "no significant bearing on [Plaintiff's] ability to work" affords Plaintiff no relief because the error was harmless.  (Doc. 11 at 8, n.7).  Specifically, the Commissioner states that because the ALJ "conceded" that her condition  reasonably could have caused her symptoms and, therefore, was deemed to be a "severe impairment" capable of causing pain and other limitations, he proceeded to evaluate the intensity and persistence of the symptoms and their effect on her ability to work.  (*Id*. at 8, n.7 (citing R. 25, 29)).  The MRI did not, according to the Commissioner, "confirm the severity of the alleged symptoms" and that is why the ALJ "properly went on to evaluate the intensity and persistence of [Plaintiff's] alleged symptoms and their effect on her ability to work...." (*Id*.)  Therefore, the Commissioner concludes there was no harm to Plaintiff.  (*Id*.) The Commissioner further states that "substantial evidence fully supports the ALJ's finding that such pain did not limit Plaintiff beyond the limitations accounted for in the RFC finding

or prevent Plaintiff from returning to her past relevant work." (*Id*. at 9).

When a claimant asserts disability premised on pain or other subjective symptoms, the Eleventh Circuit Court of Appeals has set forth the applicable standard for consideration.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). Recently applying this standard, Chief United States District Judge Karon O. Bowdre stated:

> If an ALJ discredits a claimant's subjective complaints, he must give "explicit and adequate reasons" for his decision. *See id*. at 1561-62. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* at 1562. The ALJ's credibility determination need not cite "particular phrases or formulations" as long as it enables the court to conclude that the ALJ considered the claimant's medical condition as a whole. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (citing *Foote*, 67 F.3d at 1561).

*Siquia v. Colvin*, 3:11-cv-3269-KOB, 2013 WL 5521156, *6 (N.D. Ala. Sept. 30, 2013).

In the present case, the ALJ found that Plaintiff's medically determinable impairment of low back pain could reasonably be expected to cause her symptoms. (R. 29). However, he further found that "the substantial evidence does not support a conclusion that the objectively determined medical condition is of such severity to give rise to the alleged disabling pain and limitations." (*Id*.) In support of this determination, he noted that Plaintiff hurt her back in 2004. She was out of work for about two months. She reported to the emergency room on April 26, 2010, with back pain, nausea, and vomiting, and was diagnosed with an ovarian cyst. (*Id*.) In August 2010, she complained of back pain and an MRI was done, indicating disc space narrowing in the L5-S1 area. (*Id*. at 247). A repeat lumbrosacral examination was recommended and performed. (*Id*.) It revealed a broad-

9

based disc bulge and right-sided herniation compressing the thecal sac and lateral recess and causing disc space narrowing and desiccation with reactive bone marrow changes. (*Id*. at 260). There was no spinal or frontal stenosis or thecal sac or nerve root compression elsewhere. (*Id*.) The radiologist's impression was "degenerative disc changes with a broad-based bulge and a right sided disc herniation at L5-S1." (*Id*.)

On August 20, 2010, Plaintiff complained that her primary physician had not been sufficiently responsible to her back pain complaints. (*Id*. at 270). She was referred to another doctor and to a neurologist for further evaluation. (*Id*.) On November 18, 2010, Plaintiff's new doctor noted that she came in seeking epidural treatment options, and referred her to a neurologist for evaluation. (*Id*. at 282). Nothing in the record indicates that Plaintiff saw the neurologist. On February 24, 2011, Plaintiff was treated for gastroenteritis and low back pain. The record indicates that she complained that her back was hurting. (*Id*. at 280). At the time of the hearing before the ALJ on July 20, 2011, she testified her pain was "constant and radiates down her hip and leg." (*Id*. at 45). It worsened with any physical activity. (*Id*.) She was taking three medications for her pain, which on an average day was a "7 or 8 out of 10." (*Id*. at 46-47) The medication reduced the pain level to a "2 or 3." (*Id*. at 47). As a consequence of the pain, she sated that she could only stand or walk up to 15 minutes, sit up to an hour, and lift up to 15 pounds. (R. 47-48).

Premised on the foregoing, particularly the absence of any indication that Plaintiff went to a neurologist or that she ever received an epidural block, the ALJ concluded that there was "no credible, objective evidence which contradicts" the conclusion that Plaintiff was capable of performing as determined. (*Id*. at 30). He undergirded his conclusion premised on the fact that Plaintiff indicated, and the record shows she "took care of her children, cooked for them, did some

cleaning, and whatever else they needed." (*Id*.)  Plaintiff also takes care of her personal hygiene, although she does experience some pain while bending or stooping; she did grocery shopping; she paid the bills; and she used a checkbook.  (*Id*.)  Also, the treating physician's observations are consistent with the ALJ's conclusion in that the physicians simply prescribed Plaintiff medications and adjusted the same premised on her needs and indications from the radiographic and laboratory findings. (*Id*. at 31).  Finally, Plaintiff's hearing testimony was not supportive of her claim regarding debilitating pain in that she stated that the medication reduces the level of pain to a level of two or three on a scale of ten up to four hours.  (R. 46-47).

### 3.    Absence of a Physician's RFC Assessment

Lastly, as noted above, the ALJ found that Plaintiff has the residual functional capacity to perform light work; she can occasionally bend and stoop, but not climb; and, she can occasionally push and/or pull with her upper extremities. (R at 28).  Plaintiff complains that "the Commissioner's decision should be reversed because there is absolutely no support for the ALJ's RFC assessment as the record is devoid of any RFC assessments from any physician whatsoever." (Doc. 10 at 10). Plaintiff further asserts that the ALJ's conclusion that she could perform light work with occasional bending and stooping, but no climbing in a temperature-controlled environment with occasional pushing and pulling with her upper extremities (*id*. at 28) is unsupported by a physical assessment by a physician or a consultive examination by a medical professional.  (*Id*.)  Accordingly, she concludes the lack of substantial evidence in the record warrants a reversal and entry of a finding of disability premised on the present record. (Doc. 10 at 12).  The Commission retorts that a RFC from a physician is not required where there is substantial evidence in the record to support a decision. (Doc. 11 at 10-14).

An RFC is an administrative finding "based on all the relevant evidence" in the record. 20 C.F.R. § 404.1545(a)(1). It is not simply medical source opinions. *See* 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence"). The determination of an individual's RFC is a matter, along with others, that is committed to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2). At the hearing level, the ALJ "is responsible for assessing [Plaintiff's] residual functional capacity." 20 C.F.R. § 1546(c). SSR 96-5p provides:

> Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

SSR 96-5p, 1996 WL 374183, *4. "[A] medical source statement must not be equated with the administrative finding known as the RFC assessment." *Id*. at 5. The ALJ must evaluate any medical opinion in light of the other evidence presented. *See Green v. Social Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. 2007) ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ. 20 C.F.R §§ 404.1513, 404.1527, 404.1545."). Finally, in evaluating this claim, it must also be remembered that while the ALJ has a duty to develop a full and fair record, that obligation does not relieve Plaintiff of the "burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

12

The medical evidence before the ALJ did not substantiate Plaintiff's claim of disabling symptoms. Plaintiff points to no inconsistency between the ALJ's RFC determination and the medical evidence. Under the facts, the ALJ was not required to obtain an RFC from a physician. Similarly, he was not required to obtain a consultative examination. *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) ("the administrative law judge is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the administrative law judge to render a decision"); *Ford v. Secretary of Health and Human Services*, 659 F.2d 66, 69 (5th Cir. 1981) (Unit B) ("It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision."). There was sufficient evidence for the ALJ in this case to determine that Plaintiff had not established that she was unable to return to past relevant work. This is particularly true in view of Plaintiff's testimony, cited above, that her medication reduces her pain to a level of two or three for up to four hours. (R. 46-47). He was not required to further develop the record in view of what was already before him. *See Ingram v. Comm. Social Sec. Admin.*, 496 F.3d 1253,1269 (11th Cir. 2007) (an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision").[3]

To the extent Plaintiff relies on *Coleman v. Barnhart*, 264 F. Supp. 2d 1007 (S.D. Ala. 2007), the court finds it to be inapposite for a number of reasons. First, it is not controlling in this court. Second, it is factually distinguishable. In *Coleman*, the court noted that the finding of an ability to do "medium work" was incongruent with the "plaintiff's numerous severe impairments." *Id.* at

---

[3]The court also notes that Plaintiff merely is speculating that an further evaluations would support her disability claim. This is insufficient to undermine the ALJ's determination in this case. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).

1010.

## IV.   <u>CONCLUSION</u>

Premised on the foregoing, the court finds that the Commissioner's decision is due to be

**AFFIRMED** and the action be **DISMISSED WITH PREJUDICE**.  An appropriate order will be

entered.

**DONE**, this the 1st day of April, 2014.

_____

**JOHN E. OTT**
Chief United States Magistrate Judge